IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

FIRST SPECIALTY INSURANCE )
CORPORATION, )
  )
    Plaintiff, )  Civil Case No. 07-05-KI
  )
  vs. )  OPINION AND ORDER
  )
THE CONFEDERATED TRIBES OF THE )
GRAND RONDE COMMUNITY OF )
OREGON, )
  )
    Defendant. )
————————————————— )

 Gregory A. Chaimov
 P. Andrew McStay, Jr.
 Davis Wright Tremaine LLP
 1300 S.W. Fifth Avenue, Suite 2300
 Portland, Oregon 97201

  Attorneys for Plaintiff

Kimberly D'Aquila
Deneen Aubertin Keller
Confederated Tribes of Grand Ronde
9615 Grand Ronde Road
Grand Ronde, Oregon  97

Attorneys for Defendant

KING, Judge:

The Confederated Tribes of the Grand Ronde Community of Oregon ("Tribe") sued its investment advisors in Multnomah County Circuit Court, which sent the action to arbitration pursuant to an agreement between the parties.  The Tribe lost in arbitration and the arbitrators awarded the investment advisors attorney fees and costs.  The Tribe then brought a successful action in its tribal court system to vacate the arbitration award.  First Specialty Insurance Corporation ("FSIC"), the successor by assignment to the investment advisors, brought the action now before me asking this court to declare the tribal court's vacation of the arbitration award invalid and to enter judgment on the arbitration award.  Before the court are the Tribe's (#15) and FSIC's (#11) Cross Motions for Summary Judgment.  For the reasons below, I conclude that the Tribal Court had jurisdiction and grant comity to its ruling.

## FACTS

The Tribe is a federally recognized Indian tribe.  The Tribe's Constitution, approved by the Acting Deputy Assistant Secretary of Indian Affairs on November 20, 1984, authorizes establishment of a Grand Ronde Tribal Court, which occurred by Tribal Ordinance on April 12, 1989.  Tribal law requires that the Chief Judge and Court of Appeals Judges have JD or LLB degrees from an American Bar Association accredited law school, are members of the Oregon

State Bar, have a minimum of ten years experience practicing law, and have demonstrable knowledge of Indian, federal, and Oregon law.

In 1992, the Tribe hired Strategic Wealth Management, Inc. ("SWM") to serve as its financial and investment advisor. The Tribe and SWM signed an Investment Advisory Agreement ("1992 Agreement") at the Tribe's headquarters on the reservation in Grand Ronde, Oregon. Patrick Sizemore is President and Chief Executive Officer of SWM. Sizemore provided investment services to the Tribe at the Tribe's offices in Grand Ronde, Oregon, where he participated in hundreds of meetings with the Tribal Council.

In 2001, the Tribe sued SWM and Sizemore in Multnomah County Circuit Court, claiming in part that SWM and Sizemore violated the Oregon Securities Law, ORS 59.115. SWM and Sizemore moved to compel arbitration under a clause in the 1992 Agreement. On December 2, 2002, Multnomah County Circuit Court ruled that all claims between the parties were subject to binding arbitration and dismissed the claims without prejudice.

On January 27, 2003, the Tribe's attorneys filed a demand for arbitration on behalf of the Tribe under the 1992 Agreement, seeking damages for misrepresentations and omissions made by SWM and Sizemore and alleging claims for securities violations, breach of contract, breach of fiduciary duty, fraud and negligent misrepresentation. SWM and Sizemore alleged counterclaims against the Tribe. Each party included a request for attorney fees and costs in its prayer for relief. A panel of the American Arbitration Association conducted the arbitration in Seattle, Washington from March 30 to April 27, 2004. The panel dismissed the Tribe's claims, as well as SWM and Sizemore's counterclaims, and issued a Final Award on August 13, 2004 granting SWM and Sizemore $1,471,023.70 in attorney fees and costs, plus interest.

On August 16, 2004, the Tribe petitioned the Tribal Court for an order vacating the portion of the Final Award that awarded attorney fees and costs to SWM and Sizemore. SWM and Sizemore moved to dismiss the Tribe's petition for lack of subject matter jurisdiction and lack of personal jurisdiction. On December 20, 2004, the Tribal Court issued an Order Denying Motion to Dismiss. After a hearing on the merits of the Tribe's petition to vacate, the Tribal Court entered an Order Vacating Arbitration Award of Fees and Costs on August 5, 2005 in which it again addressed the issue of personal and subject matter jurisdiction. The Tribal Court concluded that taking jurisdiction over SWM and Sizemore "is fully consistent with the provisions of the Tribal Court Ordinance." Keller Aff. Ex. 11 at 13. The Tribal Court also concluded that SWM and Sizemore had "significant and long term consensual relationships with the Tribe 'of the qualifying kind' to support Tribal Court jurisdiction" under federal law. Id. at 16.

SWM and Sizemore appealed the Tribal Court's decision. SWM's insurer, FSIC, substituted for SWM and Sizemore in the proceedings. On October 31, 2006, the Tribal Court of Appeals issued an opinion affirming the order of the Tribal Court. FSIC then filed this federal action.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On a motion for summary judgment, the

evidence is viewed in the light most favorable to the nonmoving party.  Universal Health

Services, Inc. v. Thompson, 363 F.3d 1013, 1019 (9th Cir. 2004).

## DISCUSSION

FSIC seeks a declaration that the Tribal Court's vacation of the arbitration award was

invalid because the Tribal Court lacked jurisdiction to review the award.  FSIC also seeks to

enter judgment on the arbitration award under the Federal Arbitration Act ("FAA").  FSIC

contends that the issue before the Tribal Court did not challenge the conduct of SWM and

Sizemore but instead challenged the conduct of non-tribal members that occurred off the

reservation—the arbitrators' decision following the arbitration hearing in Seattle.  Thus, FSIC

argues that the Tribal Court's jurisdiction over nonmembers who choose to do business on tribal

lands does not apply, leaving the Tribal Court without jurisdiction.

The Tribe contends that SWM's and Sizemore's on-reservation consensual dealings with

the Tribe are sufficient to establish jurisdiction in the Tribal Court.  Even though the petition

concerned vacating the arbitration award, the Tribe argues there is a clear nexus between the

arbitration award and the consensual relationship established by the 1992 Agreement, thus

satisfying the jurisdictional test.  Once jurisdiction is established, the Tribe contends that proper

deference for tribal court systems prevents reconsideration of any issues on the merits already

decided by the Tribal Court.

FSIC argues that under the FAA, the Tribal Court is not a permissible venue in which to

challenge the arbitration award.  The Tribe disagrees, noting that the arbitration clause does not

designate an exclusive forum for confirmation or vacation of an arbitration award.  The FAA's

venue provisions are permissive, allowing a party to bring a motion to confirm, vacate, or modify

an arbitration award either where the award was made or in any proper district under the general

venue statute. Cortez Byrd Chips, Inc. v. Harbert Constr. Co., 529 U.S. 193,195 120 S. Ct. 1331

(2000). I see no reason to exclude tribal courts from the permissive conclusion of this analysis.

"Non-Indians may bring a federal common law cause of action under 28 U.S.C. § 1331 to

challenge tribal court jurisdiction." Boozer v. Wilder, 381 F.3d 931, 934 (9th Cir. 2004). With

some exceptions, tribal courts have the first opportunity to determine the extent of their own

jurisdiction. Legal questions relevant to a tribal court's decision on tribal jurisdiction are

reviewed de novo by the federal court. AT&T Corp. v. Coeur D'Alene Tribe, 295 F.3d 899, 904

(9th Cir. 2002).

FSIC does not contest the issues of exhaustion and personal jurisdiction. I will turn to the

question of the Tribal Court's jurisdiction.

"[A]bsent express authorization by federal statute or treaty, tribal jurisdiction over the

conduct of nonmembers exists only in limited circumstances. . . . Montana v. United States [450

U.S. 544, 101 S. Ct. 1245 (1981)] . . . is the pathmarking case concerning tribal civil authority

over nonmembers." Strate v. A-1 Contractors, 520 U.S. 438, 445, 117 S. Ct. 1404, 1409 (1997).

> "To be sure, Indian tribes retain inherent sovereign power to exercise some
> forms of civil jurisdiction over non-Indians on their reservations, even on non-
> Indian fee lands.[1] A tribe may regulate, through taxation, licensing, or other
> means, the activities of nonmembers who enter consensual relationships with the
> tribe or its members, through commercial dealing, contracts, leases, or other
> arrangement. A tribe may also retain inherent power to exercise civil authority
> over the conduct of non-Indians on fee lands within its reservation when that

---

[1] "Non-Indian fee lands" refers to "reservation land acquired in fee simple by non-Indian
owners." Strate, 520 U.S. at 446.

conduct threatens or has some direct effect on the political integrity, the economic
security, or the health or welfare of the tribe."

Strate, 520 U.S. at 446 (quoting Montana, 450 U.S. 565-66).  Strate extended Montana to govern

tribal assertions of adjudicatory authority over non-Indian fee land within a reservation.  Strate,

520 U.S. at 453 (tribal court did not have jurisdiction over accident on a public highway

maintained by the state under a federally granted right-of-way over reservation land).  The Court

has reserved the "question of tribal-court jurisdiction over nonmember defendants in general."

Nevada v. Hicks, 533 U.S. 353, 121 S. Ct. 2304, 2309 n.2 (2001).

The Tribe contends Montana does not apply because the 1992 Agreement does not

concern non-Indian fee land.  I realize that this issue has been reserved by the Court but I will

apply Montana anyway because the dispute between the parties arose from a contract rather than

a tort.  Montana provides a helpful analytic framework.

The consensual relationship exception requires that the regulation imposed by the tribe

has a nexus to the consensual relationship itself.  "A nonmember's consensual relationship in one

area thus does not trigger tribal civil authority in another–it is not 'in for a penny, in for a

Pound.'"  Atkinson Trading Co., Inc. v. Shirley, 532 U.S. 645, 656, 121 S. Ct. 1825 (2001)

(quoting E. Ravenscroft, The Canterbury Guests; Or A Bargain Broken, act v, sc. 1.) (tribe had

no authority to impose hotel occupancy tax on nonmember guests of hotel located on non-Indian

fee land within a reservation, even though hotel owner is a statutory Indian trader).

Here, the relationship between SWM and Sizemore and the Tribe–memorialized in the

1992 Agreement–is at the core of the dispute.  I am not persuaded by FSIC's argument that the

Tribe is solely challenging the conduct of the arbitrators.  But for the 1992 Agreement, there

would have been no dispute and no arbitration. The relationship caused Sizemore to participate in hundreds of meetings with the Tribal Council on the reservation. I conclude that SWM and Sizemore were nonmembers who entered into a consensual relationship with the Tribe through a contract. Consequently, the 1992 Agreement provides the Tribal Court with jurisdiction.

I now turn to the issue of whether to grant comity to the Tribal Court rulings.

Unless the federal court withholds comity, the federal court enforces the tribal court judgment without reconsidering any issues decided by the tribal court. AT&T, 295 F.3d at 903-04. Federal courts generally must recognize and enforce tribal court judgments under principles of comity. Comity is always withheld under two circumstances: (1) when the tribal court lacked personal or subject matter jurisdiction; or (2) when the tribal court denied the losing party due process of law. Wilson v. Marchington, 127 F.3d 805, 810 (9th Cir. 1997), cert. denied, 523 U.S. 1074 (1998). Furthermore,

[A] federal court may, in its discretion, decline to recognize and enforce a tribal judgment on equitable grounds, including the following circumstances:

(1) the judgment was obtained by fraud;

(2) the judgment conflicts with another final judgment that is entitled to recognition;

(3) the judgment is inconsistent with the parties' contractual choice of forum; or

(4) recognition of the judgment, or the cause of action upon which it is based, is against the public policy of the United States or the forum state in which recognition of the judgment is sought.

Id.

FSIC relies only on the second discretionary reason to deny comity. It contends that the Tribal Court's rulings directly conflict with the ruling of Multnomah County Circuit Court that sent all claims to arbitration, including a possible counterclaim for attorney fees. Based on the "all claims" language, FSIC argues the ruling implies that the Circuit Court decided the Tribe waived sovereign immunity for any claim alleged against it. The Tribe denies this, arguing that Multnomah County did not consider the issue of the waiver of sovereign immunity for an award of attorney fees because the parties did not expressly raise it.

The Multnomah County ruling says nothing about sovereign immunity. FSIC does not dispute the Tribe's contention that neither side raised the issue. Based on experience, I am unwilling to read an implied holding into the court's ruling. If the issue was not raised by the parties, I doubt that the judge considered it sua sponte. This is corroborated by the fact that the ruling says nothing about sovereign immunity. I conclude that the Tribal Court's rulings do not conflict with the ruling of the Multnomah County Circuit Court. Thus, I grant comity to the Tribal Court's rulings.

FSIC also contends that the Tribal Court undermined federal law by reaching beyond the reservation, in violation of <u>Montana</u>, and by failing to apply the FAA when reviewing the arbitration award, instead reviewing it de novo. The Tribe argues that disagreement with the Tribal Court's ruling is not a valid reason for denying comity. I agree. FSIC wants me to address the merits of the issue before the Tribal court. Once I decide that the Tribal Court had jurisdiction and that its ruling is entitled to comity, my role in the dispute is over. "[F]ederal courts may not readjudicate questions–whether of federal, state or tribal law–already resolved in

tribal court absent a finding that the tribal court lacked jurisdiction or that its judgment be denied comity for some other valid reason." <u>AT&T</u>, 295 F.3d at 904.

Based on this analysis, there is no need to address the parties' arguments concerning issue and claim preclusion, the waiver of sovereign immunity, and whether the arbitration award can be vacated under the FAA and associated case law.

## CONCLUSION

Defendant Tribe's Motion for Summary Judgment (#15) is granted. Plaintiff FSIC's Motion for Summary Judgment (#11) is denied. This action is dismissed with prejudice.

IT IS SO ORDERED.

Dated this _____2nd_____ day of November, 2007.

_____/s/ Garr M. King_____
Garr M. King
United States District Judge